Day, C. J.
The original petition was filed in the court of common pleas for the county of Licking, to contest the validity of the last will of David M. Glancy, deceased. The case was appealed to the district court, where it resulted in a verdict and judgment for the defendants. The plaintiffs moved for a new trial, on the ground, among others, that the verdict was against the law and against the evidence. This motion was overruled. A bill of exceptions was taken embodying all the evidence. It is claimed on the part of the plaintiffs, that, upon the facts disclosed by the record, the court ei’red in overruling the motion for a new trial, and in rendering judgment upon the verdict of the jury.
It appears, from the record, that David M. Glancy was twice married. By his first wife he had ten children, who are the plaintiffs ; and by the second he had three, who, with their mother, are the defendants.
Sometime in the year 1859 he drafted a will, by which he directed his debts to be paid, and gave the remainder of his
^property to his wife during her life, and, after her decease, to her two sons, John and James.
The will was drawn on a sheet of letter-paper, filling, at that' time, two pages. The will concluded on the second page as follows:
*126 “ In testimony whereof, I have hereunto set my hand and seal, this-day of- — , in the year of our Lord one thousand eight hundred and fifty-nine.
“ David M. Glancy.'
“ Signed, published, and declared by the above-named David M. Glancy, as and for his last will and testament, in presence of us, who, at his request, have signed as witness the same.”
On the 21st day of February, 1860, having become very feeble, he sent for two of his neighbors, Shelton Benear and Robert Jones, and requested one of them to bring him his pocket-book, and said that it contained his will, and he desired to finish it. He took the will and filled the blanks in the clause before quoted — the first with the figures “21,” and the second with the word “February,” and erased the word “fifty-nine ” and wrote “sixty.” He then wrote on the top of the third page the following:
“ N. B. Should my wife have more heirs by me they are equally in all at the same time the others do.”
“'Signed, sealed, and delivered in presence of us, who, at his request, have signed the same as witnesses.” ■
At the request of Mr. Glancy, both Benear and Jones then signed the foregoing clause as witnesses; but he did not sign the same himself, nor did he at any time sign the will otherwise than his name appears on the second page, as before shown. He, however, declared to these witnesses that the paper so signed by them was his will. Mr. Glancy died in about a week after this transaction.
Mrs. Glancy was at that time pregnant, and the defendant, Montgomery Glancy, was born a few months after the death of his father.
The foregoing is the substance of the evidence given on the trial in the district court.
*The jury found that part of the paper, written on the first and second pages, signed by David M. Glancy, to be his valid last will, excluding that part written on the third page and not signed by him. *
The court rendered judgment establishing the will, in accordance with the verdict.
This petition in error is brought to reverse the rulings and judgment of the district court; and the only question it becomes *127 necessary for us to consider, on this part of the case, is whether the court erred in overruling the motion for a new trial.
The second section of the “ act relating to wills,” is as follows:
“ Every last will and testament . . . shall be' in writing, and signed, at the end thereof, by the party making the same, . . . and shall be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge the same.” S. & C. Stat. 1616.
The testator is required, by this section of the statute, to sign his will, “ at the end thereof.” The reason of this requisition is, obviously, to prevent improper alterations of a will, and embarrassments like those that arise in this case. It is said, in the case of McGuire v. Kerr, 2 Brad. 244, that the object of the law is, “to secure the instrument from interpolation or unauthorized addition. It is not to be regarded as a merely arbitrary rule. The provision is a judicious one, and care should be taken not to break in upon it by lax interpretation. In England, the courts have gone great lengths in exacting a literal compliance with the statute which directs the will to be signed ‘ at the foot or end thereof.’ Williams on Ex¥s, 65; 2 Rob. Eccle. 140; 1 Curtis, 912.”
The case of Hays v. Harden, 6 Penn. St. 413, is in point; and the following part of the opinion of the court is especially applicable to this case:
“The argument, that all which precedes the signature, having once been formally executed, should remain stable, and that the additional matter alone should be rejected, is plausible but unsound. It is evident that the testator ^considered the whole to be one will; and we have no reason to believe he “would have -wished any part of it to stand if the whole did not. We must bear in mind that every executed will is revocable in the testator’s lifetime; and when devises are subjoined to it, it is evident that the original paper does not contain the testator’s whole counsel. . . . It is better, therefore, that an informal addition should operate as a statutory revocation of the whole, than that a plain injunction should be frittered away by exceptions. The statute is a most wholesome one; and while we refrain from carrying its provisions beyond the views of the framers of it, we must not err on the other side.”
If the statute of this state, in the light of these cases, be *128 applied to the facts in this case, the controversy is easily determined.
The evidence showed that the decedent wrote the whole will; that the part on the third page was written in the presence of the witnesses to “finish” it, and, as is apparent from the concluding clause, with the intention of having them sign it. It can not be doubted but that it was the condition of his wife that induced him to make this material addition and change in the former disposition of his property. He desired to make the same provision for an unborn child as for her other children.
From the facts attending the execution and acknowledgment of the paper as his will, it is clear that he intended the part on the third page, as well as that on the first and second, to be his will. The original paper did not contain his whole purpose or will. It required the finishing provision for a posthumous child.
The decedent did not sign the paper in the presence of the witnesses. He did, however, acknowledge it to be his will, but not until the addition was made. That was as much embraced in the acknowledgment as any part of it, and without it, the will was unfinished and not declared to be the will he wished them to attest.
The witnesses signed the paper at the end, where he requested, in attestation of the finished will. If his previous signature be regarded, it does not agree with the attestation, *as contemplated by the statute. The signature would be attached to one disposition of his property, and the attestation to another, and for that reason the will would be invalid.
But it is entirely clear that the first and second pages of the paper, without the third, did not constitute the last will of the decedent. The paper was not signed “ at the end thereof,” as required by the statute to make a valid will. It follows that the verdict of the jury was clearly against the law and the evidence, and that the court erred in not setting it aside and granting a new trial.
It is claimed on the part of the defendants that the verdict of the jury, in cases of this class, can not be reviewed on error.
Whether the proceedings in this case be regarded as under the code, as allowed by the 604th and 605th sections, or under the wills act; and whether the appeal be regarded as taken under the 24th section of the last-named act, or under the 5th section of the act of 1858, “ to relieve the district courts,” etc. (S. & C. 1157), the provisions of these sections are so nearly alike, that, under the decis *129 ion in the ease of Ide v. Churchill, 14 Ohio St. 372, we think the provisions of the 4th section of the act of 1858, are broad enough to embrace cases of this class, and. that this objection of the defendants is not, therefore, well taken.
The judgment of the district court must be reversed, and the case remanded for further proceedings.
White, Welch, Brinkeshoee, and Scott, JJ., concurred.